UNITED STATES v. JASON COLANTUONI

STATEMENT OF FACTS

Defendant JASON COLANTUONI agrees that the following facts are true, accurately describe Defendant's role in the offense, and provide a sufficient factual basis for Defendant's guilty plea:

From in and about March 2020 through in and about April 2020, Defendant conspired with the individuals identified in the Information as Individual-1 and Individual-2, and others, to commit price gouging in violation of the Defense Production Act, Title 50, United States Code, Sections 4512 and 4513, by willfully accumulating for the purpose of resale at prices in excess of prevailing market prices, materials which had been designated as scarce in response to the COVID-19 pandemic, in violation of Title 18, United States Code, Section 371.

Company A was a limited liability company formed in Florida by Individual-1 on or about March 11, 2020, in response to the COVID-19 pandemic. Defendant, a longtime friend of Individual-1 and Individual-2, served as a representative of Company A during the relevant period.

On and about March 25, 2020, the Secretary of Health and Human Services, acting pursuant to authority delegated by the President of the United States, designated 15 categories of health and medical resources under the Defense Production Act as scarce materials and the supply of which would be threatened by accumulation in excess of reasonable demands of business, personal, or home consumption, for the purpose of resale at prices in excess of prevailing market prices. These health resources included personal protective equipment (PPE) such as N95 filtering facepiece respirators.

An N95 respirator is designed to achieve a very close facial fit and filter out at least 95% of airborne particles, including bacteria and viruses. In connection with the COVID-19 pandemic, the U.S. Centers for Disease Control (CDC) recommended that health care workers use N95 respirators in hospitals and other medical treatment environments. During the relevant time period, N95 respirators provided critical, lifesaving protection for workers in hospitals and other medical treatment environments.

Defendant conspired with Individual-1 and Individual-2 to use Company A to exploit the critical need of hospitals and healthcare workers for such PPE during the COVID-19 pandemic. Through Company A, the coconspirators accumulated PPE, including N95 respirators, from various sources, including online marketplaces such eBay, as well as other individuals. Company A then sold the N95 respirators to desperate hospitals at prices in excess of the prevailing market price. These hospitals included hospital systems located in Massachusetts and Veterans Affairs Medical Centers in Massachusetts and elsewhere.

Defendant's role included purchasing N95 respirators on behalf of Company A, storing the N95 respirators at his residence, and handling shipping and delivery of the N95 respirators to

hospitals. Defendant provided his residence as a workspace and storage area for Company A and set up Company A's website and email address for the coconspirators.

Individual-2 presented Defendant with the opportunity to join the conspiracy and participate in Company A. Individual-2, who worked for an unrelated medical supply company, served as head of sales for Company A. Defendant agreed to allow Individual-2 to use Defendant's name while conducting business on behalf of Company A, including allowing Individual-2 to use a Company A email address in Defendant's name. This was intended to allow Individual-2 to conceal his identity and involvement with Company A. Defendant understood that Individual-2 did not want his name associated with price gouging and other criminal activity.

Prior to the COVID-19 pandemic, the hospitals to which Company A sold N95 respirators made by a leading manufacturer typically paid approximately $0.44 to $0.70 per respirator. That manufacturer did not raise the prices for its N95 respirators during the relevant period. Company A, in contrast, offered to sell N95 respirators to hospitals for as much as $11.95 per mask. Individual-1 and Individual-2, through Company A, marked up the price of N95 respirators sold to hospitals to maximize their profit on their resale of the masks. Defendant understood that the pricing charged by Company A for N95 respirators was in excess of the prevailing market prices.

Company A sold approximately 1,000 boxes of N95 respirators to various hospitals during the relevant period, with each box containing 20 or 30 respirators. The weighted average price (*i.e.*, the average price across the various models, weighted by quantity purchased or sold) for Company A's purchase of N95 respirators was approximately $4.48 per respirator. The weighted average price for Company A's sales of those N95 respirators to hospitals was approximately $9.91 per respirator.

Defendant acknowledges that each of the acts below were in furtherance of the conspiracy.

On and about March 10, 2020, an email was sent to a representative of Hospital-1 in Defendant's name, stating that Defendant was "referred" by Individual-2 and asking if the representative was "looking for N95 protective masks." The email added that they "have about 10,000 [leading manufacturer] brand N95 masks left, with a lead time of 1-2 weeks."

On and about March 18, 2020, Company A received $56,400 from Hospital 1 for the purchase of 200 boxes of N95 respirators (30 per box), at a price of $9.40 per respirator.